# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FIFTY50 MEDICAL LLC | § § § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-2051-S |
| H&H WHOLESALE SERVICES, INC. | § § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff Fifty50 Medical LLC's ("Fifty50") Partial Motion to Dismiss [ECF No. 41]. For the reasons set forth below, the Court grants the Motion.

### I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Jane J. Boyle to the docket of this Court on March 8, 2018.

In August 2014, Fifty50, a pharmacy, ordered blood glucose test strips labeled for international sale from H&H Wholesale Services, Inc. ("H&H"). Answer & Countercl. ("Countercl.") ¶ 7. Fifty50 continued to purchase the international version of the FreeStyle and FreeStyle Lite blood glucose test strips from H&H until July 2015.[1] Second Am. Compl. ¶ 3. Fifty50 allegedly sold some of the international strips in the United States without providing necessary disclosures and disclaimers, leading Abbott Laboratories, Abbott Diabetes Care, Inc., and Abbott Diabetes Care Sales Corporation[2] to sue Fifty50 and H&H, among others, for trademark infringement. Countercl. ¶ 10. Fifty50 settled these claims and subsequently filed suit

---

[1] The parties dispute whether the strips were labeled "strips for international sale only" or "international strips." Resp. 2. The Court need not, and does not, resolve this factual dispute at this stage.
[2] The Abbott entities sell FreeStyle and FreeStyle Lite blood glucose test strips. Second Am. Compl. Ex. A, at 6.

against H&H for violation of the warranty against infringement. Second Am. Compl. ¶ 3. H&H filed a counterclaim, asserting various affirmative defenses and bringing two causes of action against Fifty50. In its first cause of action, H&H alleges that Fifty50 violated its warranty against infringement under Texas Business & Commerce Code § 2.312(c). In its second cause of action, H&H alleges that Fifty50 accepted goods from H&H but failed to pay for them. Fifty50 filed a partial motion to dismiss, seeking to dismiss H&H's first cause of action.

## II. THE RULE 12(b)(6) STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the Court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

H&H's Counterclaim alleges a cause of action pursuant to Texas Business & Commerce Code § 2.312(c), which states:

> Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications.

The second clause is unique in that it imposes a warranty on the buyer under certain circumstances. However, the contours of this clause are not well defined, as there is "very little case law regarding this specific section." *Bonneau Co. v. AG Indus.*, 116 F.3d 155, 157 (5th Cir. 1997). *Bonneau* itself represents one of the most thorough cases on the issue and is highly instructive in the instant case.

H&H alleges that Fifty50 "furnished specifications" to H&H when it "specifically instructed H&H to fill the order with test strips labeled for international sale." Resp. 5-6. According to H&H, "[w]hen the buyer . . . specifies which goods the seller should prepare or provide, the buyer assumes responsibility for possible infringement." *Id.* at 5. The Court disagrees for two reasons. First, H&H's interpretation of the term "specification" would mean that a warranty is imposed on every buyer who selects a particular item from among the options contained in the seller's normal inventory.

3

Second, H&H's interpretation is inconsistent with the Fifth Circuit's analysis in *Bonneau*. In that case, the buyer furnished a hang-tag design to the seller. 116 F.3d at 158. The seller then manufactured a display system based on the buyer's design. *Id.* The buyer created the hang-tag design, delineated the use and shape of a "T-Hook" and two cantilever support arms, and received no assistance from the seller in designing the hang-tag. *Id.* The Fifth Circuit found that the hang-tag design constituted a specification under § 2.312(c). *Id.* Importantly, the *Bonneau* court concluded that "[the buyer's] design contain[ed] *sufficient specificity* for a competent manufacturer to *construct* the product, and thus, constitutes a 'specification' pursuant to § 2.312(c)." *Id.* (emphasis added).

Here, by contrast, Fifty50 merely selected the international version of the strips when presented with a choice of international or domestic strips. Fifty50 could provide no specificity, much less sufficient specificity, because the product was already in existence and available for purchase. And, H&H did not construct or otherwise create any product that was not already in its inventory. Comment 3 to § 2.312(c) states that a buyer will be liable if that buyer "orders goods to be assembled, prepared, or manufactured on his own specifications." TEX. BUS. & COM. CODE § 2.312 cmt. 3. This language suggests that, to furnish a "specification," a buyer must ask the seller to assemble, prepare, or manufacture an item—not merely to provide an item that already exists in the seller's normal stock. *See also Bonneau*, 116 F.3d at 158-59 (analyzing Comment 3 and noting that § 2.312(c) is implicated when a buyer "employ[s] another party to build [a] specific product"). In the instant case, Fifty50 did not ask H&H to assemble, prepare, or manufacture any product. Thus, unlike the *Bonneau* buyer, Fifty50 did not furnish a specification to H&H and does not owe indemnification to H&H under § 2.312(c).

4

Because Fifty50 is not liable under § 2.312(c), the Court does not reach Fifty50's alternate argument that H&H failed to provide notice as required by Texas Business & Commerce Code § 2.607.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Fifty50's Motion to Dismiss. Because it is undisputed that Fifty50 only purchased items from H&H's normal stock, the Court finds that amendment would be futile. Thus, the Court dismisses the Counterclaim's first cause of action with prejudice.

**SO ORDERED.**

SIGNED November 8, 2018.

KAREN GREN SCHOLER
**UNITED STATES DISTRICT JUDGE**